55 CCPA
### Application of Floyd L. BEMAN.
### Patent Appeal No. 7966.

United States Court of Customs and Patent Appeals.

June 13, 1968.

———◆———

Glwynn R. Baker, Midland, Mich., Bernd W. Sandt, Wilmington, Del., for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,* Judges.

WORLEY, Chief Judge.

Beman appeals from the decision of the Board of Appeals which affirmed the examiner's rejection of claims 1–6 and 8–10[1] as unpatentable over the prior art under 35 U.S.C. § 103.

The invention relates to a method of producing salicylic acid and its alkali metal salts, as reflected in claim 1:

> 1. The method for producing sodium salicylate which comprises introducing a dry phenol-sodium phenolate mixture in a ratio of 3 to 9 moles of phenol per mole of phenolate into a reaction zone maintained at a temperature of from about 140° to about 175°C. and under a carbon dioxide pressure of from 15 pounds per square inch to about 500 pounds per square inch, gauge, and under at least mild agitation, and maintaining said reactants in contact with each other for a period not to exceed 5 hours, removing the reaction mixtures from the reaction zone and separating the solid crystalline sodium salicylate which formed during the reaction from the reaction mixture.

Appellant states that his process employs shorter reaction times and lower pressures (of the order of 1–33 atmospheres, gauge) than the processes of the prior art, while still maintaining a high yield of the desired salicylate material.

In claims 3, 4, 8 and 9, appellant initially distills water from an aqueous solution of sodium hydroxide and excess phenol by employing chlorobenzene as a water-azeotroping agent, thus assuring provision of a "dry phenol-sodium phenolate mixture" for introduction into the "reaction zone" recited in claim 1. He also separates the sodium salicylate pre-

---

1. Appearing in application Serial No. 250,-207, filed January 9, 1963 and entitled "Preparation of Ortho-Hydroxy Aromatic Carboxylic Acids and Their Salts."

cipitate by filtration, washes the precipitate with chlorobenzene and recycles the filtrate and washings, including phenol and unreacted sodium phenolate, to the process.

The references are:

| Wolthuis | 2,453,105 | Nov. 2, 1948 |
|---|---|---|
| Nordt | 2,824,129 | Feb. 24, 1958 |
| Barkley | 2,824,892 | Feb. 18, 1958 |
| Wacker (Great Britain) | 384,619 | Dec. 8, 1932 |

Lindsey, Chemical Reviews, Vol. 57, Aug-Dec., 1947, pages 584–592.

————◆————

Wacker discloses reacting water-free sodium phenolate with carbon dioxide in the presence of excess phenol as a solvent. He forms his initial reaction charge by dissolving aqueous sodium hydroxide in excess phenol and distilling with xylene, an azeotroping agent, to remove the water. In one example he employs a temperature of "about 140°C." and a carbon dioxide pressure of "about atmospheric" to obtain "practically the theoretical quantity" of sodium salicylate within 15 hours reaction time, although observing that:

    \* \* \* The reaction can of course also be conducted under an increased or reduced pressure.

Nordt also prepares sodium salicylate by reacting anhydrous sodium phenolate with carbon dioxide in the presence of excess phenol as a solvent at temperatures of 150–160°C. and carbon dioxide pressures of "at least 50 atmospheres." He states that "raising of the pressure of the carbon dioxide increases the reaction velocity," thus avoiding the long reaction times required by the prior art to obtain quantitative yields, and discloses that a "practically quantitative yield can be obtained in a very short reaction time" of the order of ½–1 hour at the pressures he employs. Nordt separates the sodium salicylate from phenol and unreacted sodium phenolate, mixes the latter with more sodium phenolate and recycles it to the process.

Barkley discloses reacting anhydrous sodium phenolate in excess phenol with carbon dioxide at temperatures of 140°-- 160°C. and carbon dioxide pressures of 40 pounds per square inch for about one hour to form sodium salicylate in yields in excess of 90% theoretical. His contribution to what appears to be an otherwise conventional process is the addition of a long chain aliphatic alcohol to the reaction mixture as a diluent to facilitate mass transport and recovery of the salicylate product. After completion of the reaction, the sodium salicylate is separated from the reaction mixture, and the aliphatic alcohol and excess phenol are recycled for reuse.

Wolthuis reacts carbon dioxide with potassium phenolate employing a halogenated benzene, such as chlorobenzene, as a diluent. Initially, to form anhydrous potassium phenolate, he removes water by distilling it off with part of the chlorobenzene. The reaction is carried out at temperatures of about 150°C. and carbon dioxide pressures of 45–120 pounds per square inch. The potassium phenolate salt is said to result in higher yields of the salicylic acid than the corresponding sodium salt.

Lindsey presents a historical survey of the methods used in producing salicylic acid and discusses the influence of such factors as pressure, temperature and the presence of water on the reaction. He states:

    The minimal pressure required for quantitative carbonation probably corresponds to the dissociation pressure of the metal aryloxide—carbon dioxide complex at the temperature employed and possibly varies according to the

aryloxide used. Davies showed that for the sodium phenoxide—carbon dioxide complex (prepared by heating sodium phenoxide at 105° C. with carbon dioxide under pressure) the dissociation pressure at temperatures above 140°C. lay between 3 and 4 atm.

* * *

The board affirmed the examiner's rejection of claims 1, 2, 5, 6 and 10 as unpatentable over either Nordt or Wacker in view of Lindsey under 35 U.S.C. § 103. Both noted that Nordt differs only in employing a higher pressure than appellant utilizes, while Wacker's process differs only in the use of a somewhat lower pressure and longer reaction time. The board was of the view that Nordt and Wacker "show just what the worker of ordinary skill in this art would expect," namely "that the reaction time would be shorter" with use of higher pressures. It agreed with the examiner that, in view of Lindsey, the particular process conditions recited in appellant's claims would be obvious to one of or-

dinary skill. It also concurred with the examiner's finding that the process steps recited in claims 3, 4, 8 and 9 would be obvious to one of ordinary skill, relying on the disclosures of Barkley and Wolthuis.

Appellant's arguments do not persuade us of error below. We agree that one of ordinary skill would find it obvious to increase the carbon dioxide pressure employed in the Wacker process,[2] as suggested by him, in full expectation of decreasing the reaction time needed to obtain nearly quantitative yields. Conversely, it is our opinion that each of the secondary references makes it clear that it is not necessary to employ "at least 50 atmospheres" of carbon dioxide pressures in the Nordt process to achieve quantitative yields in a short time. Other details in claims 3, 4, 8 and 9 were, we think, properly found to be obvious, the references speaking for themselves in that regard.

The decision is affirmed.

Affirmed.

2. In his brief appellant appears to have some misconception as to exactly what steps and conditions the Wacker process entails. That misconception seem to have resulted from his misinterpretation of what the Lindsey article relates about the Wacker process in contradistinction to commercial processes in the United States, Germany and Great Britain. In any event, we are concerned with what the Wacker patent describes as his process, not what Lindsey may be interpreted to describe as that process.

At oral argument, appellant's counsel attempted to draw a distinction between solid phase carboxylations, with which Lindsey is primarily concerned, and liquid phase carboxylations as discussed by Wacker, Nordt and Barkley. In substance, counsel did not think Lindsey, relating as it does to a dry, solid phase process, would make it obvious to modify the pressure in the liquid phase processes of Wacker and Nordt. In rejoinder, the solicitor observed that the distinction appellant attempts to formulate is a new issue not discussed below. Nor is it discussed in appellant's brief. We will not discuss it here.